# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MAURO BUSTAMANTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 CV 970 |
| | ) | |
| TIN, INC., individually and d/b/a TEMPLE-INLAND, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mauro Bustamante ("Bustamante") has filed an eleven-count complaint seeking damages against his former employer, Defendant Tin, Inc. d/b/a Temple-Inland ("Temple-Inland"). He claims violation of his federal rights under the First Amendment (Count IX), the Civil Rights Act of 1866, 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1 *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), and asserts state common law claims of intentional infliction of emotional distress ("IIED") (Count VIII) and retaliatory discharge (Count X). Temple-Inland has moved to dismiss the First Amendment and state law claims. Bustamante acquiesces in the dismissal of his First Amendment claim but opposes the dismissal of his state law claims. For the reasons stated below, the motion to dismiss [# 15] is granted with respect to Counts IX and X and denied as to Count VIII.[1]

---

[1] The complaint invokes the court's jurisdiction under numerous statutes. Certainly, jurisdiction ostensibly rests in 28 U.S.C. §§ 1343(3)(a)(4) (civil rights), 42 U.S.C. § 2000e(5)(f)(5) (Title VII), 29 U.S.C. § 626 (ADEA), and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

A. Legal Standard Applicable to Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); *Kennedy* v. *Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002); *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999). *See also Bell Atlantic Corp.* v. *Twombly*, 550 U.S. __, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.")

B. Count VIII – Intentional Infliction of Emotional Distress

Temple-Inland argues that Bustamante's IIED claim is preempted by the Illinois Human Rights Act ("IHRA"), relying on that Act's exclusivity provision: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 Ill. Comp. Stat. 5/8-111(D); *see* 775 Ill. Comp. Stat. 5/2-102(A) (delineating civil rights violations in employment and labor context).

Bustamante's complaint is couched in the language of employment discrimination claims. It alleges that Bustamante worked for Temple-Inland from 1980 through March 31, 2006, during which time Temple-Inland discriminated against him and other Hispanic and older employees through a wide range of conduct. Among other discriminatory acts, Temple-Inland, through David Ayala, Bustamante's supervisor, or Arturo Arroyo, the plant manager, required Bustamante (and others like him) to work under dangerous conditions, made degrading comments about him, and disciplined him (unfairly) in a loud, abrasive, embarrassing, and humiliating manner. Bustamante complained about the discriminatory and harassing treatment to Temple-Inland; Temple-Inland was fully aware of the discrimination and harassment but did nothing to investigate or address the unlawful conduct. On the contrary, Temple-Inland fired Bustamante for complaining about discrimination and harassment, for complaining about unsafe working conditions, and to prevent him from reaching eligibility to collect his full pension on his 62nd birthday.

*Giese* v. *Phoenix Co. of Chicago, Inc.,* 639 N.E.2d 1273, 1277, 159 Ill. 2d 507, 517, 203 Ill. Dec. 454 (Ill. 1994), held that a plaintiff's claims of negligent hiring and negligent retention were barred by IHRA because plaintiff would have had no independent basis for imposing liability on her former employer other than the prohibition against sexual harassment arising under IHRA. On the other hand, *Maksimovic* v. *Tsogalis*, 687 N.E. 2d 21, 177 Ill. 2d 511, 227 Ill. Dec. 98 (Ill. 1997), held that common law claims of assault, battery, and false imprisonment were not barred by IHRA where the plaintiff has "established the necessary elements of each tort independent of any legal duties created by the [IHRA]." 687 N.E.2d at 22. The court in *Maksimovic* characterized *Giese* as holding ". . . that if a common law action is in essence one

3

which seeks redress for a 'civil rights violation' as defined by the Act and there is no basis for the action other than the Act, the circuit court lacks jurisdiction to adjudicate the claim." 687 N.E.2d at 23. *See also Naeem* v. *McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006) ("[I]f the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not furnish . . . the legal duty that the defendant was alleged to have breached, the IHRA does not preempt a state law claim seeking recovery for it.").

In opposition to the motion to dismiss, Bustamante relies on *Benitez* v. *KFC Nat'l Mgmt. Co.*, 714 N.E.2d 1002, 1008-09, 305 Ill. App. 3d 1027, 239 Ill. Dec. 705 (Ill. App. Ct. 2nd Dist. 1999), holding that IHRA did not bar an employee's IIED claim, and a number of federal district court cases interpreting Illinois law with respect to IHRA's exclusivity. *See Spahn* v. *Int'l Quality & Productivity Ctr.*, 211 F. Supp. 2d 1072, 1074-75 (N.D. Ill. 2002) (denying motion to dismiss IIED claim where the complaint indicated that plaintiff may be able to prove the elements of IIED without relying on any legal duties created by IHRA); *Temores* v. *SG Cowen*, 289 F. Supp. 2d 996, 1006-07 (N.D. Ill. 2003) (IHRA did not preempt IIED claim); *Warnell* v. *Ford Motor Co.*, 48 F. Supp. 2d 1095, 1097 (N.D. Ill. 1999) (denying motion to dismiss IIED claim where plaintiff's allegations "could constitute an intentional infliction of emotional distress claim independently of the civil rights claims"); *Roberts* v. *County of Cook*, 213 F. Supp. 2d 882 (N.D. Ill. 2002) (denying motion to dismiss where IIED claim did not depend on prohibitions against sex discrimination); and *Arnold* v. *Janssen Pharaceutica, Inc*., 215 F. Supp. 2d 951, 955 (N.D. Ill. 2002) (denying motion to dismiss and stating, "That extreme and offensive conduct might also constitute sexual harassment or disability discrimination under state or federal civil rights laws does not affect the viability of a tort claim for [IIED]").

The issue here is whether Bustamante's allegations, if proved, could constitute IIED apart from the allegations of discrimination. "Under Illinois law, the elements of the tort of intentional infliction of emotional distress are as follows: 1) extreme and outrageous conduct by the defendants; 2) intent to cause, or a reckless disregard of the probability of causing, emotional distress; 3) severe or extreme emotional distress suffered by the plaintiff; and 4) actual and proximate causation of the emotional distress by defendants' outrageous conduct." *Lewis* v. *Cotton,* 932 F. Supp. 1116, 1118 (N.D. Ill. 1996) (citations omitted). All of Bustamante's allegations of discrimination are incorporated into his respective claims. Within the IIED claim Bustamante further alleges that Temple-Inland's "requiring Plaintiff and other Hispanics to work in unsafe work environments while not requiring members of other races to do the same, insults, racial comments and degradations, age-based comments and degradations, disciplining Defendant [*sic*] in a loud, humiliating and embarrassing manner due to his age, hostile environment, and retaliatory environment, were actions that amounted to extreme and outrageous conduct." Complaint ¶ 121. He alleges that the conduct was intended to cause him emotional distress, he did suffer severe emotional distress, and he was damaged. Complaint ¶¶ 122-125.

Because a reasonable jury could conclude that the alleged harassing conduct, if specifically directed at Bustamante and done with the intention to cause him emotional distress could, in fact, cause emotional distress and damage, the court concludes that the complaint supports an IIED claim. That is, even if Bustamante were unable to prove that the conduct was because of his race, color, national origin or age, he might still be able to prove the elements of IIED.

5

Temple-Inland argues, alternatively, that even if the claim is not barred by IHRA, it is barred by the Illinois Workers' Compensation Act ("IWCA"), 820 Ill. Comp. Stat. 305/1 *et seq.*, citing *Hunt-Golliday* v. *Metro. Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1016 (7th Cir. 1997). *Hunt-Golliday* held that the exclusivity provisions of the IWCA[2] barred the plaintiff employee's IIED claim. *Id.* at 1016-17.

The Illinois Supreme Court has not decided whether an IIED claim against an employer is barred by IWCA, although it has acknowledged the question. *See Giese*, 639 N.E.2d at 1275-76 ("Without intimating any view as to the merits of [the defendant's] argument [that the common law claims were barred by IWCA], we note simply that it comes too late. The exclusivity provision set forth in section 5(a) of the [IWCA] is in the nature of an affirmative defense which is waived if not asserted by the employer at trial."). The issue did not arise in *Maksimovic*. Under *Hunt-Golliday*, 104 F.3d at 1016-17 (citing *Meerbury* v. *Marshall Field & Co., Inc.*, 564 N.E. 2d 1222, 1226, 139 Ill. 2d 455, 151 Ill. Dec. 560 (Ill. 1990)), which this court must, of course, follow, Bustamante's claim will fall outside IWCA's bar only if Ayala or Arroyo was Temple-Inland's alter ego such that the injuries inflicted by them "were commanded or expressly authorized by the employer." *See also Jablonski* v. *Multack*, 380 N.E.2d 924, 927, 63 Ill. App. 3d 908, 912, 20 Ill. Dec. 715 (Ill. App. Ct. 1st Dist. 1978) (concluding that "[w]hen the person who intentionally injures the employee is not the employer in person nor a person who is realistically the alter ego of the corporation, but merely a foreman, supervisor or manager,

---

[2]The IWCA bars employee "common law or statutory right[s] to recover damages from [an] employer . . . or [its] agents or employees for injury or death sustained by any employee while in the line of his duty as such employee." 820 Ill. Comp. Stat. 305/5(a). It also provides that the compensation provided under the IWCA is the measure of the responsibility of any employer. 820 Ill. Comp. Stat. 305/11.

both the legal and the moral reasons for permitting a common-law suit against the employer collapse"); *Daulo* v. *Commonwealth Edison*, 938 F. Supp. 1388, 1406 (N.D. Ill. 1996) (race discrimination claims, even if not barred by IHRA, would be barred by IWCA).

Of the cases on which Bustamante relies, *Benitez*, *Temores* and *Arnold* treat the issue. *Benitez* affirmed dismissal of the claim against the employer where the plaintiff had sought to allege alter ego only after the employer had asserted IWCA as a defense. 714 N.E.2d at 1009. *Temores* ruled that a genuine issue of fact precluded summary judgment as to whether two senior managers had authority to make decisions and set policy on behalf (or, acted as alter ego) of the employer. 289 F. Supp. 2d at 1007. *Arnold* allowed the IIED claim to stand because IWCA preemption is an affirmative defense, not the obligation of the plaintiff to plead in her complaint. 215 F. Supp. 2d at 956-57.

The IWCA would bar an IIED claim where the employer proves that its tortfeasor employee was not its alter ego. Because the bar is an affirmative defense that the defendant must plead, Fed R. Civ. P. 8(c), and proved by the defendant, and a plaintiff is not required to anticipate affirmative defenses in his pleading in federal court,[3] the court will not dismiss the claim.[4]

---

[3]*See Gomez* v. *Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980) (holding that civil rights plaintiff is not required to plead bad faith on the part of the defendant officer; rather, the defendant must plead qualified immunity as a defense and prove the fact of good faith).

[4]Temple-Inland also argues that any claim based on its termination of plaintiff so as to avoid paying pension benefits is preempted by ERISA's anti-retaliation provision, 29 U.S.C. § 1140 ("It shall be unlawful for any person to discharge a . . . beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under [a pension] plan . . . ."). Although this is likely correct, this motivation for termination is but one of plaintiff's many allegations contributing to his IIED claim. It is not material to disposition of the claim, and because the retaliatory discharge claim will be dismissed on another ground, it is unnecessary to address this argument in order

(continued...)

C. Count X – Illinois Common Law Claim for Retaliatory Discharge

Temple-Inland argues that Bustamante's retaliatory discharge claim is preempted by the Illinois Whistleblower Act ("IWA"), 740 Ill. Comp. Stat. 174/1 *et seq*. Citing case authority that the IWA codified the common law cause of action for retaliatory discharge, Temple-Inland contends that Bustamante's claim for common law retaliatory discharge is barred. Further, to the extent the claim rests on Bustamante's complaints about unsafe working conditions, Temple-Inland contends, it is also preempted by the Occupational Health and Safety Act's ("OSHA") prohibition against retaliation.[5] Temple-Inland contends that because Bustamante did not complain to a government or law enforcement agency, he is not protected by the IWA (or OSHA) and thus has not stated a claim upon which relief may be granted.

Bustamante alleges that he, "in fulfilling his duties as an employee of [Temple-Inland], spoke out on matters of public concern, namely, the illegal, unlawful, racist and racially discriminatory policy of forcing only Hispanic employees to work in hazardous work environments [and] the numerous issues as detailed throughout this Complaint which are also matters of public concern." Complaint ¶ 128. He says his termination "was in contravention of the clearly mandated public policy of exposing illegal, unlawful, hazardous and unsafe work environments, and the racist and racially discriminatory business policies and practices of forcing only Hispanics to work in those environments." Complaint ¶ 140. He further alleges that he reported these matters to "Defendant," Complaint ¶ 50, rather than any governmental or

---

[4](...continued)
to decide this motion.

[5]*See* 29 U.S.C. § 660(c).

8

law enforcement entity, and he acknowledges in his response memorandum that his reports were made solely to Temple-Inland.

Section 15 of the IWA, 740 Ill. Comp. Stat. 174/15, effective January 1, 2004, prohibits retaliation by an employer against an employee "for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." Whether the IWA codified and thereby preempted the common law tort of retaliatory discharge has not yet been resolved by the Illinois Supreme Court. *See Jones* v. *Dew,* No. 06 C 3577, 2006 WL 3718053, at *3 (N.D. Ill. Dec. 13, 2006) (reviewing Illinois cases) ("Although only a few courts have construed the Act, there is some indication that the Act codifies, and therefore preempts, any common law retaliatory discharge claim based on whistle-blowing activities."). In *Jones*, the court concluded that the common law claim was preempted; thus, the plaintiff who made reports of unsafe conditions within the company rather than to a governmental authority was not protected by IWA and had no common law claim. *Id.* at **3-4. *See also Riedlinger* v. *Hudson Respiratory Care, Inc.*, 478 F. Supp. 2d 1051 (N.D. Ill. 2007); *Robinson* v. *Morgan Stanley*, 06 C 5158, 2007 WL 2815839 (N.D. Ill. Sept. 24, 2007); *Smith* v. *Madison Mutual Ins. Co.,* 05 CV 142DRH, 2005 WL 1460301, at *1 (S.D. Ill. June 21, 2005) (reaching same conclusion).

Bustamante does not address the cases on which Temple-Inland relies but argues that because the IWA does not protect an employee who makes internal complaints the common law claim survives to protect them. It is plain enough, however, that the common law tort of retaliatory discharge was never construed so broadly as to comprehend an employee's complaints to his employer. *See Buckner* v. *Atlantic Plant Maintenance, Inc*., 694 N.E.2d 565,

9

568, 182 Ill. 2d 12, 230 Ill. Dec. 596 (Ill. 1998) (pointing out that the tort of retaliatory discharge is a limited exception to the doctrine of employment at will and that it had been recognized as a remedy only where an employer discharged employees for seeking worker's compensation[6] and for reporting possible criminal activity to law enforcement authorities[7]).[8]

For these reasons, the court is satisfied that plaintiff cannot prove a set of facts consistent with the pleadings that would entitle him to relief on a claim of retaliatory discharge.

## Conclusion and Order

---

[6]*Kelsay* v. *Motorola, Inc.*, 384 N.E.2d 353, 74 Ill. 2d 172, 23 Ill. Dec. 559 (Ill. 1978).

[7]*Palmateer* v. *Int'l Harvester Co.*, 421 N.E.2d 876, 85 Ill. 2d 124, 52 Ill. Dec. 13 (Ill. 1981).

[8]Bustamante cites *Johnson* v. *Baxter Healthcare Corp*., 907 F. Supp. 271 (N.D. Ill. 1995), for the proposition that "[t]he Illinois Whistleblower Act has supplanted the majority of common law retaliatory discharge claims in Illinois, but the cause of action still exists in 'situations where there is not [*sic*] other legal remedy against improper retaliatory discharge by an employer and to vindicate clearly mandated public policy.'" Response memorandum, seventh unnumbered page. This is an unfortunate statement by counsel because *Johnson* was decided more than eight years before the IWA was enacted so could not have addressed the IWA; and the quoted language is lifted wholly out of context. The court in *Johnson* ruled that the plaintiff's claim was barred by the exclusivity provision of IHRA because, even if there were a claim in Illinois for retaliatory discharge–a conclusion the court was not willing to draw--the IHRA provided an adequate remedy for the plaintiff's claim. 907 F. Supp. at 274-45.
    *Wheeler* v. *Caterpillar Tractor Co.*, 485 N.E.2d 372, 108 Ill. 2d 502, 92 Ill. Dec. 561 (Ill. 1985), held that a plaintiff stated a cause of action for retaliatory discharge for refusing to work under conditions which contravened the clearly mandated public policy of protection of the lives and property of citizens from the hazards of radioactive material. 485 N.E.2d at 377. This situation is covered by section 20 of IWA prohibiting retaliation "for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation." The case merely reinforces Temple-Inland's position that IWA codifies the common law.
    Although *Sherman* v. *Kraft General Foods, Inc*., 651 N.E.2d 708, 272 Ill. App. 3d 833, 209 Ill. Dec. 530 (Ill. App. Ct. 4th Dist. 1995), concluded that discharge of an employee in order to prevent him from exercising a statutory right to report an occupational hazard to OSHA stated a claim for retaliatory discharge, the case lacks persuasive force in light of the Illinois Supreme Court's statements limiting the tort to the situations addressed in *Kelsey* and *Palmateer* and the subsequent enactment of IWA excluding the *Sherman* fact pattern from its scope.

10

For the reasons stated above, the motion to dismiss [# 15] is granted as to Counts IX and X and denied as to Count VIII. Temple-Inland is directed to answer Count VIII.

ENTER:

Dated: February 11, 2008

_____
JOAN HUMPHREY LEFKOW
United States District Judge